UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROADGET BUSINESS PTE. LTD., | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 3139 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANITES, | ) | |
| PARTNERSHIPS, and UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON | ) | |
| SCHEDULE A HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court grants the Moving Defendants' motion to modify the asset restraint [40]. See Statement.

**STATEMENT**

Plaintiff Roadget Business Pte. Ltd. ("Roadget") filed this copyright infringement case under 17 U.S.C. § 101 *et seq*. against 24 defendants, alleging that they each sold products that infringed two of Roadget's copyrighted designs and nineteen copyrighted photographs. The Court entered an *ex parte* temporary restraining order ("TRO") on April 24, 2024, that it later converted into a preliminary injunction on May 13, 2024. Doc. 20, Doc. 37. As part of the injunction, the Court froze Defendants' assets on Temu, the platform on which Defendants sold the allegedly infringing products. Now, 23 of the 24 Defendants, Zhongren Childrens Clothing, Foshan City Senbao Clothing Co., Ltd. DBA Aru and Aru, Saror Ardor, LittleMaria, Guangzhou Shengfanshun Clothing Co., Ltd. DBA Sheng Fanshun, AALINYI, Qiaolan Gong DBA Blossoming Yoga, Small Choke Pepper, XJFS, Xingcheng Milan Garment Co., Ltd DBA Xingcheng Milan Garment Co., Ltd., AmazingC, HUXIAOTIAN, STARRY TREE, PSY FUSHI, Beibeistyle, CHLCME, YC Large size womens clothing, linfenglyf, UNIQUE PYRAMID, YANGXIANGFUSHI, YICHEN Fashion ladys clothing, Fengyu Jeans, and Yaqi costume (collectively, "Moving Defendants"), ask the Court to modify the asset restraint, arguing that the Court should only restrain assets equal to the amount of sales revenue the Moving Defendants generated through the allegedly infringing sales.[1] Roadget does not contest the Moving Defendants' argument that as a matter of law the Court should not freeze a greater amount of assets than potential revenue the Moving Defendants generated through such infringing sales.

---

[1] Defendants 1, 4, 5, 7, 9, 10, and 12–24 filed the instant motion on May 21, 2024. *See* Doc. 40. The Court later granted Defendants 2, 6, 8, and 11's motion to join the motion. *See* Doc. 64.

However, Roadget argues the evidence of sales the Moving Defendants provide is unreliable. Because the Court finds that the Moving Defendants' documentary evidence is credible, the Court grants the Moving Defendants' motion to reduce the asset restraint.

Roadget sued 25 Defendants, claiming that they sold apparel using designs or images that Roadget had copyrighted. Defendants are internet retail businesses owned by Chinese nationals located in China who sold the allegedly infringing goods on Temu, an online sales platform. Temu generates a unique "Good ID" for each product listed for sale on its platform and one "Mall ID" for each of its vendors.

Using the identified unique Good IDs and Mall IDs, the Moving Defendants asked Temu to identify on a per-business basis the number of allegedly infringing sales, the amount of revenue such sales generated, the total amount of frozen assets as of May 5, 2024, and the total amount of frozen assets as of May 12, 2024. According to Temu's data, with the exception of Zhongren Childrens Clothing,[2] each Moving Defendant generated less revenue through allegedly infringing sales than they have assets frozen under this Court's order. Temu's data shows that the amount of assets frozen for each Defendant increased between May 5 and May 12, 2024. Temu's senior in-house counsel, Christine Casaceli, provided a sworn affidavit detailing how Temu gathered the data. Casaceli explained that Temu queried data according to the Goods ID and Mall ID numbers. Temu then exported the data into Excel spreadsheets, "with reserve fund data for each defendant seller organized by Mall ID, and sales volume and revenue data for each accused product organized by Goods ID." Doc. 56 at 2.

The operators of each of the individual Moving Defendants swore in separate affidavits to the accuracy of Temu's data. The operators also uniformly swore that the allegedly infringing listings were "taken down after the TRO," ceasing infringing sales. *See, e.g.*, Doc. 40-1 at 2, ¶ 19.

"[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Klipsch Group, Inc. v. Big Box Store Ltd.*, 2012 WL 5265727, at *4 (S.D.N.Y. Oct. 24, 2012). "[T]he appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 7621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). "To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quotation marks and brackets omitted).

Here, the Moving Defendants ask the Court to reduce the asset restraint to the amount of revenue each Defendant generated through their allegedly infringing sales. In support of their motion, the Moving Defendants submit data from Temu showing the amount of frozen assets in each individual Defendant's account almost uniformly exceeds the amount of revenue each

---

[2] Zhongren Childrens Clothing's frozen assets as of May 12, 2024 are $3,726.66, while the business generated $22,954.97 in allegedly infringing sales.

individual Defendant generated through allegedly infringing sales. Moreover, the Temu data shows that the amount of frozen assets continued to grow between May 5 and May 12, 2024, even though each of the Moving Defendants' operators swore that they no longer listed the allegedly infringing products after the Court issued its TRO. The fact that the amount frozen continued to grow after the Moving Defendants ceased sales demonstrates the over-inclusiveness of the asset freeze. Additionally, profit definitionally cannot exceed revenue. Because equity limits the disgorgement remedy that Roadget seeks to illicit profits, the data demonstrates that the current asset freeze is almost uniformly overbroad, except for Zhongren Childrens Clothing. *See Deckers*, 2013 WL 12314399, at *2 ("[T]he appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief.").

In the face of Temu's data and the Moving Defendants' affidavits, Roadget's argument that the Moving Defendants failed to shoulder their evidentiary burden to show that the excess assets are not the product of infringing activities fails. Roadget voices concerns that the Temu data is unreliable and that the Moving Defendants' operators did not provide their internal business records to confirm it. However, the Moving Defendants submitted affidavits from each operator of the individual businesses confirming the accuracy of the amount of frozen assets and allegedly illicit revenues reflected in the Temu data, and from Temu's in-house counsel who provided a sworn explanation of how the platform collected its data based on the Moving Defendants' request. These affidavits are sufficient supporting evidence for the Court to find Temu's data credible. *See Roadget Business Pte. Ltd. v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 24 C 607, Doc. 77 (N.D. Ill. Apr. 16, 2024) (granting motion to modify asset restraint on basis of Temu data). Furthermore, if Roadget later discovers that "Temu has provided inaccurate or knowingly false information, [it] may be able to bring claims against the platform itself." *Id.* at 4.

The cases on which Roadget relies to argue that the asset restraint should remain unchanged also fail to persuade the Court of that position. Roadget points to *Antsy Labs* to argue that the Moving Defendants must provide their own business records to justify modifying the asset freeze. But in that case, the court noted that the evidence the defendants submitted contained serious misstatements of fact, including a falsehood that they had stopped selling infringing products when they in fact continued to make such illicit sales. *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *4 (N.D. Ill. Nov. 23, 2022). Roadget does not identify any similar material falsehoods in the Moving Defendants' affidavits or data submissions, so *Antsy Lab*'s demand for additional documentary evidence is inapplicable. Roadget also points to *Deckers* to justify freezing all assets in lieu of the Moving Defendants' profits because "the amount of profits is impossible to know (let alone resolve) at this stage[.]" Doc. 82 at 6. However, it is understood that profits cannot exceed revenues. Moreover, *Deckers* did not involve a contested motion to freeze assets—the court awarded an asset freeze on an *ex parte* basis and specifically noted that "[t]o the extent that the restraint might be too broad, the defendants may file challenges to the scope of the TRO by submitting evidence that some or all of the money has other sources." *Deckers Outdoor Corp.*, 2013 WL 12314399, at *2. Here, the Moving Defendants submitted such evidence. Finally, Roadget's citation to *Construct Data*

*Publishers* for the proposition that the Moving Defendants must provide an accounting for their frozen funds' sources is likewise unavailing. That case specifically involved a limited release of frozen assets so the defendants could pay attorneys' fees and certain living expenses—the defendants did not challenge the propriety of asset freeze's scope itself, which is the basis of the Moving Defendants arguments here. *See Federal Trade Commission v. Construct Data Publishers*, No. 13 C 1999, 2014 WL 7004999, at *8–9 (N.D. Ill. Dec. 11, 2014).

       The Court also cannot credit Roadget's other argument that the Moving Defendants may have sold additional infringing goods under different listings. By making such an argument, Roadget asks the Court to expand the asset restraint beyond the scope of the goods it identified in its complaint. For the Court to do so, it needs evidence—like that which Roadget submitted to secure the initial TRO and later preliminary injunction—that the Moving Defendants sold or are continuing to sell infringing products. *See Deckers*, 2013 WL 12314399, at *1 ("The general test for obtaining a temporary restraining order starts with requiring the plaintiff to show that it will suffer immediate irreparable harm, has no adequate remedy at law, and its claims have a likelihood of success."). The Court will not shift Roadget's burden onto the Moving Defendants to justify leaving in place an asset freeze that the available evidence shows is overbroad.

       The Court finds that the Moving Defendants' evidence demonstrating the amount of revenue they generated from allegedly infringing sales on Temu is credible. The Court therefore grants their motion to modify the asset restraint so that it freezes assets equal to the amount of revenue they generated in allegedly infringing sales.[3] The Court orders the parties to submit a proposed order to this Court in accordance with this decision by July 23, 2024.

Dated: July 18, 2024                                                            /s/Sara L. Ellis

---

[3] For all of the Moving Defendants except for Zhongren Childrens Clothing, this means that the asset freeze is reduced to equal the amount of revenue they generated through allegedly infringing sales. With respect to Zhongren Childrens Clothing, the asset freeze remains in place until the amount of revenue frozen equals the amount of revenue they derived from allegedly infringing sales.